# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

LEIGH E. WISE     :
          :
 Plaintiff,     :    Civil Action
          :    No. 5:09-cv-127 (CAR)
v.         :
          :
GORDON S. HEDDEL, Department :
of Defense Inspector General, et. al. :
          :
 Defendants.    :
_____:

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Currently before the Court are cross Motions for Summary Judgment [Doc. 45 &

48]. Through this action, Plaintiff Leigh E. Wise challenges the decisions of the Air

Force Board for Correction of Military Records under the Administrative Procedures Act

(AAPA@, 5 U.S.C.A. ' 551 et seq. For the reasons discussed herein, the Court finds that

the Board=s decision was not arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with the law. The decision, therefore, may not be disturbed by the

Court. Defendant=s Motion for Summary Judgment is **GRANTED**; Plaintiff=s Motion is

**DENIED**.

## STANDARD OF REVIEW

This Court has jurisdiction under the APA to review the actions of the Air Force

Board for the Correction of Military records ("AFBCMR") and to "hold unlawful and set

aside any agency action, findings, and conclusions found to be . . . arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A);

Piersall v. Winter, 435 F.3d 319 (U.S. App. D.C. 2006); Randall v. U.S., 95 F.3d 339 (4th

Cir. 1996).

      The scope of judicial review in such cases is limited, and the standard of review is

high. AFBCMR decisions are entitled to the "exceedingly deferential" standard of the

Administrative Procedure Act, 5 U.S.C. § 706. Sierra Club v. Van Antwerp, 526 F.3d

1353, 1360 (11th Cir. 2008) (citation and quotation omitted). "The courts role is to

ensure that the agency came to a rational conclusion, not to conduct its own

investigation and substitute its own judgment for the administrative agency's decision."

Id. (citation and quotation omitted.). Thus, upon review, the court may look only at

whether the AFBCMR's decision "was based on a consideration of the relevant factors

and whether there has been a clear error of judgment." Motor Vehicle Mfrs. Ass'n. v.

State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L.Ed.2d 443 (1983)

(quotation omitted). "Once the [c]ourt finds a rational connection between the evidence

and the decision, [it] must defer to the agency's expertise." Tackitt v. Prudential Ins.

Co. of Am., 758 F.2d 1572, 1575 (11th Cir. 1985) (citation omitted).

      On summary judgment, the Court must view the evidence and all justifiable

inferences in the light most favorable to the nonmoving party. <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 254-55, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); <u>see also</u> <u>Reeves</u>

<u>v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105

(2000). The moving party Aalways bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact@and that entitle it to a judgment as a matter of law. <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party

discharges this burden, then the burden shifts to the nonmoving party to go beyond the

pleadings and present specific evidence showing that there is a genuine issue of material

fact or that the moving party is not entitled to a judgment as a matter of law. <u>Avirgan</u>

<u>v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991); <u>see</u> Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at

324-26. This evidence must consist of more than mere conclusory allegations. <u>See</u>

<u>Avirgan</u>, 932 F.2d at 1577.  Summary judgment must be granted if Athere is no genuine

issue as to any material fact and . . . the movant is entitled to judgment as a matter of

law.@ Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Celotex</u>, 477 U.S. at 322.

## FACTUAL HISTORY

For the eight-year time period relevant to this action, Plaintiff was a Staff

Sergeant in the Air Force Reserves, stationed at Dobbins Air Reserve Base (Dobbins) and Robins Air Force Base (Robins).  For much of this time, Plaintiff sought, through the intra-military judicial system, to have her military performance records restored after having allegedly suffered unlawful reprisal from her commanding officers for reporting fraud, waste, and abuse of taxpayer money.

Plaintiff joined the Air Force Reserves in November of 1991 and served on and off active duty for sixteen years.   In February 1997, she was hired to work for the 700th Airlift Squadron at Dobbins, serving as a Military Personnel Apprentice in the Squadron Orderly Room.   Sometime in the latter part of 2000, Plaintiff began to voice concerns about her professional training opportunities and progress. Enlisted members in the Air Force generally progress in their assigned career fields by achieving certain training skill levels; minimum training levels must be met before the enlisted personnel can be competitive for promotion.   At the time Plaintiff began voicing complaints, she had achieved A three-level@ status in her career field and was attempting to achieve A five-level@ status.   Once that training was complete, Plaintiff could attempt to secure A seven-level@ training and be eligible for promotion to technical sergeant once other time-in-grade and position eligibility requirements were met.   The needed training was specific to her duty office and would have to be provided by her chain of command.

For some time, Plaintiff attempted, unsuccessfully, to receive the required

training through her immediate supervisors.   Finally, on November 5, 2000, her chain of command held a meeting to address deficiencies in Plaintiff=s training.   The meeting was chaired by her squadron commander, Lt. Col. Kornacki.   They concluded that the unit Ahad not done a very good job@ to ensure that Plaintiff was properly trained, and a training plan was put into place.   The proposed three-month plan was executed poorly, however; and more than a year later, Plaintiff had still not received her Afive-level@ training.   Thus, in January 2001, Plaintiff contacted the Inspector General=s office at Dobbins.   Plaintiff complained that her supervisor T.Sgt. Christian failed to assist her in the Afive-level@ training.   Her command learned of the complaint and claimed to have remedied the problem.   Plaintiff was finally able to reach Afive-level@ status in late January of 2001.

On March 3, 2001, Plaintiff filed a Formal Grievance for AFailure to Provide Required Training@ with the Inspector General.   In this, her first formal grievance, Plaintiff alleged various concerns about her supervisor, first sergeant, and commander based upon their failure to follow appropriate directives regarding their responsibilities to train her.   That same month, Plaintiff=s request for Aseven-level@ training was denied.  By April, Plaintiff had decided to transfer to another position in the Military Equal Opportunity Office.   Plaintiff felt forced to accept the position because of perceived hostility from coworkers.

On April 20, 2001, Plaintiff filed her second formal grievance with the Inspector General, this time for @reprisal@ based upon her superiors= failure to provide her with @seven-level@ upgrade training. Plaintiff further alleged that her direct supervisor, T.Sgt. Christian, was guilty of @dereliction of duty@ because she had not implemented the prior training upgrade recommendations from the chain of command.

About this same time, T.Sgt. Christian completed Plaintiff=s @Enlisted Performance Review@ (@EPR@) for the period from February 1999 to 2001. T.Sgt. Christian downgraded Plaintiff=s performance from her previous EPR completed in August of 1999. Lt. Col. Komacki, unaware that the EPR was downgraded as compared to her prior EPR, indorsed it as written.

The next month, at the request of the Inspector General, those responsible for Plaintiff=s training held a meeting. The group concluded that there were still flaws in the training. In response, Lt. Col. Kornacki relieved T.Sgt. Christian of her duties. Plaintiff later complained that Lt. Col. Kornacki had not dealt with T.Sgt Christian harshly enough and had unfairly referred to Plaintiff=s problems with her supervisor as a @personality conflict.@ Based on this, Plaintiff charged that Lt. Col. Kornacki had engaged in @conduct unbecoming an officer.@

After learning that her 2001 EPR was downgraded, Plaintiff filed a grievance with the Air Force Reserve Command, the parent command for Dobbins. Plaintiff

requested higher review of her complaints and alleged that the EPR downgrade was a reprisal by T.Sgt. Christian for Plaintiff=s filing a complaint with the Inspector General. The Air Force Reserve Command conducted a detailed investigation into all of Plaintiff=s complaints. The investigating officer ultimately found that T.Sgt Christian did engage in reprisal against Plaintiff by rendering the downgraded EPR in 2001, stating that A[t]he evidence does not support that she would have received this EPR if there had been no . . . complaint since all the stated reasons for the lower rating stem from her continuing to complain or her inability to let go.@ The investigator likewise noted that there was no history of Plaintiff being counseled or reprimanded for any behavior, including lower performance, and that the downgraded EPR was submitted only two months after the complaint was made.

The investigating officer further found, however, that the allegations of reprisal against Lt. Col. Kornacki were unsubstantiated, that he was not derelict in his duties for failing to ensure Plaintiff was properly trained, and that he had not engaged in any other wrongdoing. The investigator noted that Lt. Col. Kornacki made many and concentrated efforts to solve the training problem and that he had sought assurances that the EPR was fair and not based upon any residual resentment due to Plaintiffs= complaints. She also noted that Lt. Col. Kornacki had not been privy to the prior EPR and was thus unaware that the challenged EPR was a downgrade. The investigator

found that, in Lt. Col. Kornacki=s mind, the EPR was an accurate (if not generous) assessment of Plaintiff's performance, given her tendency to disrupt the workplace, poor attitude, and inability to focus on the mission. Regarding the claim that Lt. Col. Kornacki failed to ensure Plaintiff was properly trained, the investigator found that, as soon as Lt. Col. Kornacki realized there was a problem with Plaintiff=s training, he took action in the form of meetings, training, and documentation, to solve the matter B ultimately, relieving T.Sgt. Christian of her supervisory duties due to her management failures. The investigator thus determined that Lt. Col. Kornacki was not derelict, but, rather, A. . . did everything he could to fix her training issues.@

Finally, the investigator found that Plaintiff=s supervisors had legitimate reasons for denying her request for Aseven-level@ training in April of 2001 and that this was also not an act of reprisal. The investigator=s bottom line on this allegation was that the supervisor simply jumped the gun in raising the issue of availability with Plaintiff before checking on other mandatory prerequisites.

These findings were reviewed, approved by the Headquarters Air Force Inspector General, and forwarded to the Department of Defense Inspector General (ADoD IG@) in February of 2003. The DoD IG AMilitary Reprisal Investigations Branch@ then reviewed the findings.

After review, the DoD IG *disagreed* with the Air Force Inspector General=s

conclusion that T.Sgt. Christian had engaged in reprisal. The DoD IG concluded that the preponderance of the evidence revealed that the challenged EPR ratings were based upon a decline in job performance and substandard conduct, as opposed to retaliation for a protected disclosure. The DoD IG also found that there were no other acts of reprisal.

During the statutory review, the DoD IG determined that the Air Force Inspector General had identified all protected communications, investigated all allegations, interviewed Plaintiff, interviewed responsible supervisory officials, interviewed all other relevant witnesses, considered all relevant information, prepared proper witness summaries, and conducted the investigation without bias or command influence. Based upon this review as a whole, and with specific references to statements from various witnesses, the DoD IG determined that the ratings rendered were an accurate reflection of Plaintiff=s performance. They based this conclusion on witness testimony which revealed Plaintiff Aroutinely displayed a negative attitude to the extent that her work and the morale of the unit suffered.@ Witnesses described Plaintiff=s Aconstant@ and continuous complaining, as well as her lack of initiative.

As opposed to the conclusions drawn by the Air Force Inspector General, the DoD IG viewed T.Sgt. Christian=s comments as an expression that APlaintiff had developed an adversarial attitude and accomplished little work during the rating

period.@ The DoD IG further referred to an identified personality conflict and concluded from the evidence as a whole that APlaintiff harbored ill-feeling and publicly expressed a personal vendetta against her supervisor.@ This vendetta took the form of demanding T.Sgt. Christian be relieved even after the training problems had been remedied, and Plaintiffs attempts to discredit T.Sgt. Christian to other people.

The DoD IG further determined, based upon the substance of the witness interview summaries, that the challenged EPR was not inconsistent with the prior EPR because of a reported decline in Plaintiffs performance between the two reports. In this regard, the DoD IG relied upon witness reports that Plaintiffs Ademonstrated skills were not up to standards@and references to her Aimmaturity, lack of initiative, failure to take responsibility, and constant complaining.@

Finally, the DoD IG addressed the alleged lack of unfavorable performance feedback provided to Plaintiff. The DoD IG concluded that Plaintiff should have been provided the structured written feedback mandated within the performance report system. However, the DoD IG determined that witness statements amply demonstrated that Plaintiff received regular and sufficient verbal feedback, to include specific reference to Plaintiffs failure to take initiative and responsibility.

Plaintiff learned of the DoD IGs findings in September of 2004. In October, Plaintiff contacted the Veterans=Equal Rights Protection Advocacy (AVERPA@. VERPA

filed a rebuttal to the DoD IG findings on Plaintiff's behalf, and the DoD IG affirmed its

prior findings. The DoD IG reviewed the challenged decision not to send Plaintiff to

seven-level training and found that the decision was not reprisal. The DoD IG found

that the decision was in fact supported by legitimate reasons: Plaintiff had just finished

her five-level upgrade; she did not have any supervisory experience as required by the

applicable regulatory guidance; scheduling class dates involved a four to six month lag;

and Plaintiff had accepted another position in her prior career field. The DoD IG also

addressed allegations Plaintiff made against Brig. Gen. Kane and the allegation that Lt.

Col. Hite (the Dobbins Inspector General) was biased. It found no merit to either

complaint.

In March 2006, after conducting a thorough re-examination of Plaintiff's file (and

in response to an Congressional Complaint Plaintiff filed with Senator Saxby Chambliss

regarding the adverse DoD IG findings), the DoD IG further concluded that Plaintiff's

continuous and various attempts to have the case reopened based upon the submission

of alleged "new evidence" provided no basis to reopen the case.

Unfortunately, in the aftermath of the adverse DoD IG findings, Plaintiff began

suffering from chest and back pain, anxiety, and depression – eventually suffering what

she terms a "nervous breakdown." In November 2005, Plaintiff was evaluated and

diagnosed with a generalized anxiety disorder – acute reaction to stress. At the end of

that year, Plaintiff's active duty orders expired. She was then forced to go without orders for an extended period of time. Plaintiff repeatedly asked that her orders be continued while she was undergoing processing through the "Disability Evaluation System." Her orders were finally cut in August/September 2006, nearly nine months later, but were not backdated. In the meantime, Plaintiff was put on a "P-4T" medical profile. The profile was based on a concern that Plaintiff=s anxiety disorder impacted her ability to perform her duties. It barred her from world-wide deployment until it could be determined whether she would be able to return to duty despite her medical conditions.

In September 2006, Plaintiff underwent a "Line of Duty" determination. A Line of Duty determination must be initiated when a reservist receives medical treatment. It is an administrative tool for determining a military member=s duty status at the time of an injury, illness, or disability and is geared to determine if the illness or injury was sustained during the member=s unauthorized absence or due to the member=s own misconduct. This determination may impact such benefits as disability retirement and severance pay.

In Plaintiff=s case, they determined that her anxiety condition existed prior to service, but was aggravated by her service B and was not due to Plaintiff=s own misconduct and did not manifest during an unauthorized absence. This decision was

adopted by the Approving Authority on December 19, 2006, and thereby became the decision of the formal Line of Duty Board. Plaintiff challenged this decision through Disability Evaluation System, but her request for reinvestigation of the Line of Duty determination as to the anxiety disorder was denied.

Plaintiff also under went a Line of Duty determination based on her complaints of chest and back pain. Initially, it was determined that her condition was "in the line of duty." However, later reviewers and the Approving Authority determined that her condition existed prior to service, but was aggravated by her service " and was not due to Plaintiff's own misconduct and did not manifest during an unauthorized absence. Plaintiff also unsuccessfully challenged this decision.[1]

Plaintiff's anxiety order diagnosis also caused her to be entered into the Air Force "Disability Evaluation System." Unlike the Line of Duty determination, the Disability Evaluation System is geared to determine whether health problems limit a service member's ability to perform his or her duties, and, ultimately, to remain in the Air Force. This involves a standard sequence of evaluations by the Medical Evaluation Board, the Informal Physical Evaluation Board, and the Formal Physical Evaluation

---

[1] Thereafter, Plaintiff also filed yet another complaint with the Dobbins Inspector General in which she alleged that her Line of Duty Determinations had been falsified; that statements within her EPR had been falsified; that she had been denied benefits to which she was entitled for "medical hold" orders from the period January to April, 2006; and that M.Sgt. Maxean Whaley was derelict in failing to provide Plaintiff with appropriate assistance in the process.

Board. All of these boards were convened to determine Plaintiff=s fitness for duty and/or medical separation category and benefits.

In April of 2007, the Medical Evaluation Board concluded that A[Plaintiff] had individual psychotherapy and medication treatment over the course of 15 months and has experienced minimal to no reduction in her anxiety or her ability to tolerate continued stress that is outside of her control.@ Plaintiff=s case then was referred to an Informal Physical Evaluation Board because of the finding that Plaintiff had a condition that may interfere with her fitness for duty. In June of 2007, the Informal Physical Evaluation Board determined that Plaintiff had a ratable and compensable unfitting condition: Aanxiety disorder with definite social and industrial adaptability impairment.@ The Board also concluded that she had obsessive compulsive personality traits which increased the severity of her anxiety disorder, but found that the condition was not separately unfitting or ratable. It accordingly recommended Plaintiff be medically discharged with severance pay or placed on the Temporary Disability Retired List[2] with a disability rating of 10%.

Plaintiff disagreed with the decision and demanded a hearing by the Formal Physical Evaluation Board. The Formal Physical Evaluation Board then reviewed the evidence and testimony, including the opinions of two medical providers. Based on this,

_____

[2] The Temporary Disability Retirement List is a vehicle to characterize a service member=s fitness for duty while waiting for the condition to stabilize to such a degree that either return to

14

the Board determined that Plaintiff had a ratable and compensable condition: "generalized anxiety disorder; major depressive disorder (single episode/severe); and panic disorder without agoraphobia." The Board also concluded that she had obsessive compulsive personality traits, but found that the condition was not separately unfitting or ratable and that the condition did not exist prior to Plaintiff's service. The Board thus recommended Plaintiff be medically discharged with severance pay or placed on the Temporary Disability Retired List with a disability rating of 100%. Plaintiff agreed with this decision, and she was placed on the Temporary Disability Retirement List with 100% disability rating on November 14, 2007.

Prior to this, however, Plaintiff had already filed a petition with the AFBCMR, seeking correction/upgrade of all her EPRs, appointment of a defense counsel and the right to depose all parties responsible for her dilemma, retroactive promotion to senior master sergeant, criminal prosecution of all Dobbins officials involved in her case, an advisory opinion declaring her a "crime victim" and providing "Feres Doctrine mandate benefits," and that she be provided 100% medical disability retirement. Plaintiff's petition was filed on July 20, 2007. Through counsel, she submitted a statement to the AFBCMR and several attachments totaling over 800 pages.

Upon receipt of Plaintiff's application, the AFBCMR sought advisory opinions

---

duty is appropriate, or disability retirement with attendant final rating is appropriate.

from two officers with subject matter expertise. The first advisory opinion came from the Air Reserve Personnel Center, which recommended relief because, in their opinion, Plaintiff suffered a downgraded EPR due to lack of training and lack of response from her supervisors. They further opined that her supervisors were aware of the training issues and admitted the training was deficient, yet they did not take the necessary steps to correct the situation. They also stated, however, that there was no credible evidence that anyone intentionally targeted her for retaliation; rather, it appeared to be more of a case of "bureaucratic inertia." The second advisory opinion was from the Air Force Reserve Command. They recommended that the Board deny Plaintiff's application, relying on the DoD IG decision from September of 2004 and the findings therein.

The AFBCMR met to consider the case on January 15 and 23, 2009. Plaintiff's request for a hearing was denied, however. The Board determined an evidentiary hearing was not necessary because that the case was "adequately documented" and Plaintiff had failed to show "a personal appearance with or without counsel [would] materially add to [the Board's] understanding of the issues involved."

After careful consideration of Plaintiff's application and military records, the AFBCMR determined that Plaintiff was due a correction to her records with respect to the period of active duty service while her Line of Duty and Disability Evaluation System assessment was being processed. The Board concluded that Plaintiff's active

duty orders should not have been involuntarily terminated in January of 2006. It thus recommended her records be corrected to indicate that she was on active duty until April 23, 2006.

The Board further concluded, however, that Plaintiff did not present sufficient evidence that she had been the victim of reprisal or that she was otherwise the victim of substantial error or injustice. With respect to Plaintiff=s claim of reprisal, the Board determined that Athere had been no showing the DoD IG investigation was improperly conducted;@ that the findings of the DoD IG were supported by the evidence of record; and that Plaintiff had not provided sufficient evidence to overcome the presumption that the DoD investigating officers Adischarge their duties correctly, lawfully, and in good faith.@ The Board, in fact, conducted its own assessment of the challenged EPRs and also found no preponderant evidence of reprisal. In all, the AFBCMR determined that there were no other corrections to be made to her records, that she suffered no inequity or injustice, and that she was due no further relief.

A few months later, Plaintiff was permanently retired with a 100% disability rating. Still unsatisfied with the AFBCMR=s decision and upset about the perceived inequities or injustices she had suffered in the preceding years, Plaintiff filed the present action alleging that various officers of the United States Air Force retaliated against her over a period of eight years in reprisal for her filing a grievance with the Air Force

Inspector General. Defendant filed a Motion to Dismiss on October 6, 2009, and on July 1, 2010, this Court granted the Motion in part, dismissing all of Plaintiff's claims except for her claim under the Administrative Procedures Act (APA).

## DISCUSSION & ANALYSIS

Now, through the Motions at bar, both parties seek a ruling as to whether the AFBCMR decision on Plaintiff's claim of reprisal should be upheld. For her part, Plaintiff contends that the present case must be remanded to the AFBCMR because its decision regarding her claim of reprisal was not rational or well reasoned and that the Board in fact (1) ignored or failed to address "documented official records" (2) failed to consider the fact that the Administrative Record contained no documented "unfavorable information on Plaintiff" (3) improperly relied on hearsay evidence; and (4) erred in refusing to provide Plaintiff with a formal hearing.[3] Defendant, of course, requests that the Court reach the opposite conclusion on the grounds that the decision, while not what Plaintiff would have liked, was still not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law [or] without observance of

---

[3] It must be noted that Plaintiff's *pro se* briefs are filled with facts that are not cited or part of the Administrative Record. The Court has done its best to distill Plaintiff's core arguments; however, facts identified which were not properly cited or which were not contained in the Administrative Record will not be considered herein. See Fed. R. Civ. P. 56; Camp v. Pitts, 411 U.S. 138, 142 (1973) (APA reviews are limited to a review of the existing record). Nor will the Court consider any new arguments that may have been raised for the first time in Plaintiff's reply brief. See U.S. v. Coy, 19 F.3d 629, 632 n. 7 (11th Cir.1994) ("[a]rguments raised for the first time in a reply brief are not properly before a reviewing court").

procedure required by law. *See* 5 U.S.C. ▪ 706(2)(A).

Upon review of the AFBCMR decision and in light of the relevant standard, the Court must agree with Defendant.   As discussed above, this Court=s role is to ensure that AFBCMR came to a rational conclusion; the Court may not to conduct its own investigation and substitute its own judgment for the Board=s.   *Sierra*, 526 F.3d at 1360. In this case, there is no basis for finding that the Board=s decision was arbitrary or capricious or that the AFBCMR abused its discretion or failed to follow the law.   The undisputed facts show that the decision was rational, well reasoned, and based upon substantial evidence. Because a rational connection between the evidence and the decision can be found, this Court must defer to AFBMCR=s expertise. *Tackitt*, 758 F.2d at 1575.

It is undisputed that, before rendering a decision, the AFBCMR reviewed Plaintiff=s submissions, including her master personnel file, and sought advisory opinions from two Air Force subject matter experts.   Plaintiff was given an opportunity to review and respond to the advisory opinions, even though she was not afforded a hearing, and she did in fact provide a reply. The Board then published a decision, which included a detailed discussion of its findings and rational, well-supported, reasons for those findings.

Nonetheless, in this action, Plaintiff attempts to identify documents and facts that

may have weighed in her favor. Clearly, she would have preferred that those things be given more weight by the Board. She has not shown, however, that those documents or facts were arbitrarily ignored, that the Board abused its discretion in finding other factors more persuasive, or that the Board otherwise failed to act in accordance with the law or procedure required when reaching its conclusions.

For instance, Plaintiff claims that the Board failed to fully consider her EPRs from February 24, 2003 to February 24, 2005, which she felt displayed a "continued pattern of abuse." She claims that AFBCMR "minimized and rationalized" the mishandling of her EPRs by claiming these acts were "administrative errors." Plaintiff then proceeds to identify suspicious errors and discrepancies in the signatures and dates on the EPRs. The facts she identifies, however, are not cited and thus may not be properly considered by this Court. Yet, even if the Court considered her claims, the facts she identifies do not establish that the Board erred in finding these discrepancies to be "administrative errors" rather than intentional, malicious misconduct.

Regardless, it is undisputed that the Board indeed addressed the challenged EPRs and the discrepancies therein. In doing so, the Board explained that "while the reports closing 24 Feb 03 and 24 Feb 04 contain administrative errors, we do not feel these errors detract from the overall evaluations of her performance . . . ." The Board's conclusion was thus drawn from a review of evidence in the Administrative Record, and the Court

cannot find that this conclusion was irrational or that it was not supported by the evidence. Therefore, the Court must defer to the Board.

Plaintiff also asserts that the AMBCMR failed to consider favorable reviews of Plaintiff=s performance in the Administrative Record and the absence of documented unfavorable reports.   For this, Plaintiff points to documents which describe her as professional and mature and state that she showed initiative, took on more responsibility than most, and complied with training requirements.   Plaintiff likewise points out that there was no AUnfavorable Information File@ in her Master Personnel Records or other unfavorable information in her EPRs   According to Plaintiff, the Board ignored this information and relied instead on Ahearsay from individuals, who were under investigation for not complying with military standards and regulations.@

In reality, the Ahearsay@ statements to which Plaintiff refers are actually the witness statements included in the Administrative Record.   The AFBCMR thus supported its findings with information in the Administrative Record.   The undisputed facts show that the Board considered multiple witness statements in the Record to conclude that Plaintiff

> routinely displayed a negative attitude to the extent that her work and the morale of the unit suffered because she was spending her time complaining rather than working, developed an adversarial attitude, harbored ill-feelings and publicly expressed a personal vendetta against her supervisor, lacked initiative, and her technical skills were not up to standard.

This conclusion is rationally supported by the content of the witness statements. The Board could also rationally find these statements to be more persuasive or more on point than the documents Plaintiff has identified. In as much, Plaintiff has failed to show that Board arbitrarily chose not to consider favorable reports in the Record or that the Board could not have rationally reached the same conclusion in light of the evidence she identifies.

The same witness statements further show that the Administrative Record was not devoid of unfavorable information about Plaintiff, as she now contends. While Plaintiff may be correct that there was no AUnfavorable Information File@ in her Master Personnel Records or other unfavorable information in her EPRs, the undisputed evidence shows that there was substantial information in the Record to support the Board=s conclusion. The Board in fact identified the information it relied on and rationally connected that information to the conclusion it reached. This is all that is relevant in the present inquiry. Again, this Court cannot conduct its own investigation of the Administrative Record and substitute its own judgment for the Board=s decision; the Court may only decide whether the AFBCMR came to a rational conclusion. Sierra Club, 526 F.3d at 1360. It did so here.

Moreover, as Defendant points out, it appears the Board did consider the absence of documentation to show Plaintiff=s duty performance was inadequate. In its

decision, the Board specifically addressed the Air Force Reserve Personnel Center Judge Advocate=s opinion that Aone can infer that some retaliation occurred@ based upon Awhat is missing from the Record, i.e., Memorandums for Record documenting deficiencies, formal training recommendations, or feed back sessions.@ The Board disagreed with that opinion and explained,

> While we agree there may be no readily apparent reasons for the lower performance rating, we do not come to the inescapable conclusion there are no other possible reasons. We note that her protected communication dealt with her lack of receiving adequate training, training which we assume was essential in order for her to perform at the highest level. As such, we must assume she was therefore incapable of performing at the highest level. In our view, the arguments made on behalf of the applicant address the reasons why her performance was affected but does not sufficiently show the contested reports are inaccurate assessments of her performance. . . .

> . . . [T]he witness statements are replete with corroborative testimony that she was given sufficient verbal feedback, routinely displayed a negative attitude to the extent that her work and the morale of the unit suffered because she was spending her time complaining rather than working, developed an adversarial attitude, harbored ill-feelings and publicly expressed a personal vendetta against her supervisor, lacked initiative, and her technical skills were not up to standard, all of which impacted upon the overall evaluation of her performance.

Based on this and all the other reasons given for its decision, the Court finds the Board's conclusion was not arbitrary or capricious and that it was in fact supported by substantial evidence in the Administrative Record.

Plaintiff's final contention is that the Board erred in denying her a hearing. She does not, however, explain why this was an error in procedure or law. Plaintiff seems to argue that she was entitled to a hearing because she asked for one. As Defendant shows, there was nothing improper about the AFBCMR decision to not hold a hearing. In the AFBCMR's report, the Board specifically explained that it considered whether a hearing was necessary and determined it was not because the case was adequately documented on paper. The Court agrees and does not find that this was an abuse of discretion or contrary to the law. See Lopez-Velazquez v. U.S., 85 Fed. Cl. 114, 135-36 (Fed. Cl. 2008) (finding decision not to convene an evidentiary hearing was not arbitrary, capricious, or unreasonable where AFBCMR had an extensive record to consider).

## CONCLUSION

Ultimately, it is clear from reading the history of this case that Plaintiff desperately wants to be heard and believed. The Court assures Plaintiff that it read and reviewed her facts and that it understands her claims. The outcome of this action, however, does not turn on whether the Court believes that Plaintiff was a victim of

reprisal.   It is irrelevant whether the Court would have reached the same conclusions as the AFBCMR.   The sole issue is whether the Court can find error with the Board's decision within the narrow confines of the applicable Rules of Evidence, this Court's limited jurisdiction, and the high standard of review in APA cases.   For the reasons discussed above, Plaintiff simply failed to satisfy her burden in this case.   Defendant, on the other hand, has identified undisputed and unrebutted evidence demonstrating that the Board's decision was rational, well reasoned, and based upon substantial evidence. Defendant's Motion for Summary Judgment is accordingly **GRANTED,** and Plaintiff's Motion is **DENIED**.

It is SO ORDERED this 12th day of July, 2011.

S/   C. Ashley Royal
C. Ashley Royal
United States District Judge, Chief

jlr